# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | .. |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1158 | **DATE** | June 10, 2004 |
| **CASE TITLE** | *United States v. Kenneth Bingham* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth in the attached Memorandum and Order, the Court GRANTS Defendant Bingham's Motion to Quash his Arrest and Suppress [13-1]. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | **JUN 1 4 2004** | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| RTS | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Hon. Blanche M. Manning |
| | ) | |
| v. | ) | 03 CR 1158    JUN 1 4 2004 |
| | ) | |
| KENNETH BINGHAM. | ) | |

## MEMORANDUM AND ORDER

Defendant Kenneth Bingham was indicted for possession of a firearm by a felon, in violation of 18 U.S.C. 922(g)(1). The present matter comes before the Court on Bingham's Motion to Quash his Arrest and Suppress. For the reasons set forth herein, the Court GRANTS this motion and suppresses the firearm found as a result of his arrest.

This case stems from a traffic stop of Bingham by the Chicago police after Bingham allegedly failed to stop at a stop sign. The Government contends that Bingham's arrest and the search of his vehicle was valid as: (1) a search incident to a legal arrest under New York v. Belton, 453 U.S. 454, 460 (1981), based on the fact that Bingham was driving without a license; or (2) a limited search based on the officers' reasonable suspicion that Bingham might have had a weapon in his vehicle, under Michigan v. Long, 463 U.S. 1032, 1033 (1983). In response, Bingham asserts that the arrest and search are invalid because: (1) the police did not have a valid reason for the initial stop because he did not run the stop sign; (2) he was legally driving on a prior traffic ticket; and (3) the police did not have reasonable suspicion to believe that he had a weapon in his vehicle. Before discussing these legal issues, however, the Court will first address the credibility of the witnesses and make the relevant factual findings.

27

# FACTUAL FINDINGS[1]

Not surprisingly, the Government and Bingham have vastly different versions of the circumstances leading up to his arrest. The Court will therefore first review each side's version of the events and then opine which version it believes to be more credible.

## A.    The Government's Version of Bingham's Arrest

Around 9:00 p.m. on September 9, 2003, two uniformed Chicago police officers, Martian Teresi and Dan Kohler, were on routine patrol in a marked patrol car. While proceeding northbound on South Halsted Street, the officers observed a 2003 Chevrolet Avalanche ("the Avalanche"), traveling southbound on Halsted, fail to stop at the stop sign at the intersection of Halsted and 105th Street.[2] Officer Teresi, who was driving, then made a u-turn at the intersection and proceeded to stop the Avalanche on the southbound lane of Halsted near 106th Street.

Officer Teresi approached the driver's side of the Avalanche, while Officer Kohler went to the passenger's side. As Officer Teresi was about 8 to 10 feet from the rear of the vehicle, he allegedly saw the driver and lone occupant, Bingham, quickly turn his left shoulder towards the center of the truck, as if he was placing or picking up an item in the center counsel. Thinking the driver was reaching for a weapon, Officer Teresi asked him to place his hands out of the window. Bingham complied with this request. Officer Teresi then asked Bingham for his

---

[1]    The facts set forth herein are derived from the parties' submissions and attachments thereto and the testimony and documents presented at the June 8, 2004, suppression hearing.

[2]    At the suppression hearing, at the request of Bingham, this Court viewed the Avalanche that Bingham was driving that night. It is an extremely large vehicle, which can best be described as a combination SUV/ pick up truck, with a bed in the back and darkly tinted rear and back passenger side windows.

driver's license, which Bingham allegedly did not have nor did he produce any traffic tickets in lieu of his license. Officer Teresi then placed Bingham under arrest for driving without a license and put him in the back of the squad car.

After placing Bingham under arrest, Officer Teresi returned to the Avalanche to see if Bingham was in fact reaching for or hiding a weapon. Upon looking into the vehicle, the officer noticed that a removable cup holder in the center console was slightly "ajar." When the officer pulled the cup holder up, he saw a small storage space underneath which contained a loaded .40 caliber handgun. After discovering the gun, Officer Teresi drove the Avalanche to the police station, while Officer Kohler drove Bingham in the police car. At the station, in addition to the gun charge, Bingham was issued traffic tickets for failure to stop and driving without a license.

## B.    Bingham's Version of his Arrest

Bingham alleges that at around 9:00 p.m. on September 9, 2003, he was driving his mother's Avalanche southbound on South Halstead street near 105th Street. In that area, Halsted is a four lane street with two lanes on each side divided by a center median planted with trees and other shrubbery. As he approached 105th Street, traveling in the left-hand lane, near the median, Bingham saw a marked Chicago police squad car behind him traveling at a "high rate of speed" in the right hand lane of Halsted. As Bingham approached the intersection of 105th and Halsted, the police car was almost directly behind him. After Bingham made a complete stop at the stop sign at 105th Street, the police car turned on its flashing lights and pulled him over near the intersection of 106th and Halsted.

After pulling his car over to the curb, Officer Teresi accused him of "blowing the stop sign" and ordered him out of the Avalanche. At the rear of the vehicle, Bingham gave Officer Kohler a traffic ticket which he was driving on in lieu of his driver's license. Bingham's license

-3-

was not suspended or revoked. Officer Kohler then placed Bingham in the back seat of the squad car, while Officer Teresi searched the Avalanche without consent. Officer Teresi then allegedly found the handgun.

## C. Findings of Fact and Credibility Determinations

Having heard testimony from both officers and Bingham, observing their demeanor, considering the reasonableness of each party's version of the events, and carefully examining the exhibits presented at the suppression hearing, this Court finds Bingham's testimony more credible than that of Officers Teresi and Kohler. This determination is based on the demeanor of the officers, as well as Bingham, while testifying and the fact that the Court finds several major inconsistencies with the officers' testimony.

First and foremost, the Court is very troubled by the officers' testimony that Bingham did not give them a traffic ticket in lieu of his license. This testimony was contradicted by the exhibits presented at trial. Defendant's Exhibit No. 2 is a copy of a February ticket ("the February Ticket") that Bingham alleges he gave to the police. The February Ticket incorrectly lists Bingham's driver's license number as B58550564249. Exhibit No. 1 is a photocopy of Bingham's actual driver's license with his correct license number -- B52550564249. The two tickets issued on September 9, 2003 ("the September Tickets"), however, do not list Bingham's correct license number, but instead, list the incorrect number as set forth in the February Ticket - B58550564249. (Defendant's Exs. 3 and 4.)

The Court finds that there is only one logical explanation for this discrepancy -- that Bingham gave the officers his February Ticket and they copied the incorrect number onto the September Tickets. The officers' explanation that they must have incorrectly copied his license number from the computer is incredulous. It would be too great of a coincidence for this Court

-4-

to believe this explanation to be true, especially in the absence of any testimony from a computer specialist, who may have been able to offer a reasonable explanation for the erroneous number.

The Court is also troubled by the conflicting testimony of the officers regarding Bingham's failure make a legal stop at the stop sign. Officer Teresi testified that Bingham made a "Hollywood stop" (e.g., slowed down at the intersection but did not come to a complete stop), while Officer Kohler stated that Bingham went right through the intersection without even slowing down.

Also of concern to the Court is that the police reports do not even mention that Bingham illegally ran a stop sign. Given that Officer Teresi testified that the purpose of these reports is to "establish probable cause," the Court finds it hard to believe that he would not list the event that allegedly gave the officers justification for the initial stop.

Finally, the Court also takes issue with Officer Teresi's testimony that he was 8 to 10 feet from the rear of the Avalanche when he saw Bingham quickly move his left shoulder as if he was reaching into the center console. He stated that as he approached the Avalanche, he was walking close to the driver's side at roughly a 22° angle. The Avalanche is a combination SUV/pick-up truck and is over six feet tall and has very dark tinted rear and back passenger side windows. Having viewed the Avalanche in the garage of the courthouse and taking into account that the stop occurred at night, this Court finds that although Officer Teresi is about 6 feet tall, it would have been nearly impossible for him to see any movement of the driver from the location that he was allegedly standing.[3]

---

[3]      When the Court viewed the Avalanche in the garage of the courthouse, the Government had Officer Teresi demonstrate exactly where he was standing when he allegedly saw Bingham make the quick movement.

Accordingly, based on the demeanor and credibility of the witnesses as well as the reasonableness of their testimony, this Court finds that: (1) Bingham did not fail to stop at the stop sign; (2) he had a ticket which he presented to the officers in lieu of his driver's license; and (3) Officer Teresi could not have seen Bingham allegedly move his right shoulder as if reaching for the center counsel.[4]

## LEGAL CONCLUSIONS

With the above factual findings in mind, the Court now turns to the legal issues. First, because Bingham stopped at the stop sign, the officers did not have any justification for the initial stop. Cf. United States v. Lewis, 910 F.2d 1367, 1372 (7th Cir. 1990). Therefore, Bingham's arrest and the search are invalid.

Nevertheless, even assuming that Bingham ran the stop sign, the officers did not have probable cause to arrest him for allegedly driving without a license. Under Illinois law, "it is an open question whether driving on a prior ticket is sufficient indicia of criminality to justify a full custodial arrest." United States v. Keller, 499 F. Supp. 415, 416 (N.D. Ill. 1980). Courts generally look at whether the local police department has a custom or procedure with regard to whether to arrest a driver who is driving on a ticket in lieu of an actual driver's license. See People v. Jordan, 297 N.E.2d 273, 276 (Ill. App. Ct. 1973): United States v. Cardona-Rivera, 904 F.2d 1149, 1153 (7th Cir. 1990). Based on this Court's experience as a judge in state court in Chicago and the relevant case law, this Court finds that the Chicago police generally to not arrest

---

[4] In an attempt to impeach Bingham's credibility, the Government argued that he did not mention the fact that he stopped at the stop sign in his affidavit attached to his motion to suppress. Counsel for Bingham explained that he drafted the affidavit and that it was a tactical decision not to put this information in the affidavit. After closely observing Bingham's testimony and his demeanor, this Court finds that his testimony was credible.

persons legally driving on a traffic ticket. People v. Morrison, 373 N.E.2d 520, 521 (Ill. App. Ct. 1978). Instead, the Chicago police usually allow the driver to drive to the police station to post a cash bond. Id. Therefore, because Bingham gave the officers a ticket in lieu of his driver's license, the officers did not have probable cause to arrest him, and therefore, any search incident to the arrest is invalid.

Likewise, this Court finds that the officers did not have a reasonable suspicion to search the driver's compartment for weapons under Michigan v. Long, 463 U.S. 1032, 1033 (1983). As set forth above, this Court finds it hard to believe that Officer Teresi could have seen Bingham make a slight movement towards the center counsel. Moreover, even if he did see this movement, the fact that Bingham was reaching for his ticket which he gave the officers would seem to rebut any suspicion that he was reaching for a weapon.

Accordingly, this Court GRANTS Bingham's Motion to Quash his Arrest and Suppress.

## CONCLUSION

For the foregoing reasons, Defendant Bingham's Motion to Quash his Arrest and Suppress [13-1]. It is so ordered.

ENTER:

_Blanche M. Manning_
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: _6/10/04_